UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61085-Civ-COHN
(08-60252-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

LEONARD MITCHELL,             :

      Movant,               :

v.                            :          REPORT OF
                                      MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

      Respondent.        :
_____

### I   INTRODUCTION

Leonard Mitchell has filed a Motion to Vacate pursuant to 28 U.S.C. §2255 (Cv:DEs 1 5), seeking relief from his sentence in Case 08-60252-Cr-COHN. Without a written plea agreement, Mitchell signed a "Stipulated Factual Basis" on 2/17/10 and that day plead guilty to both counts of his Indictment, each charging Possession With Intent to Distribute a detectable amount of cocaine base [crack cocaine] in violation of 21 U.S.C. §841(a)(1). The Indictment charged that the offense in Count 1 was committed on 4/8/08, and the offense in Count 2 was committed on 4/10/08. Mitchell was found to be a Career Offender and was sentenced on 5/7/10 at the bottom of the advisory guidelines sentencing range to 151 months imprison-ment, to be followed by a term of 3-years supervised release.

Mitchell took a direct appeal [USCA # 10-12250-HH] challenging his 151-month term of incarceration. He did not challenge his status as a career offender, but rather argued that his 151-month sentence was substantively unreasonable because the career offender range was overly harsh.  On 12/15/10 the Eleventh Circuit affirmed, see United States v. Mitchell, No. 10-12250, 405 Fed.Appx. 435, 2010 WL 5096026, at *1 (11 Cir., Dec. 15, 2010); and the opinion was issued as Mandate on 1/14/11 (see Cr:DE43, docketed 1/18/11). On 5/31/11 the Supreme Court denied certiorari, Mitchell v. United States, No. 10-10303, ___U.S.___, 131 S.Ct. 2949, 180 L.Ed.2d 238 (2011). (See Cr:DE45, Notice dated 6/2/11, docketed 6/9/11).  This timely §2255 Motion followed in May 2012.

The Motion to vacate consists of two separate documents: an unsigned standard §2255 form (at Cv:DE1), together with a type-written "Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 U.S.C. §2255 and Incorporated Memorandum of Law" (at Cv:DE5, signed/dated on 5/29/12, and docketed on 6/4/12),

This Cause has been referred to the undersigned for consider-ation and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

The Court has for its consideration: Mitchell's Motion and Memorandum (Cv:DEs 1, 5); the Government's Response (Cv:DE9) with Exhibits (Plea Transcript at Cv:DE9-1, and Cr:DE37; Sentencing Transcript at Cv:DE9-2, and Cr:DE39); and Mitchell's Reply (Cv:DE10). The Court also has before it the PSI [disclosed 4/1/10], the PSI Addendum [dated 4/30/10], and the Court's SOR. In addition, the Court has for its consideration all pertinent portions of the record in the underlying criminal case, including but not limited to the 2/17/10 factual proffer statement ("Stipulated Factual Basis," at Cr:DE27), and Mitchell's PSI Objections ("Defendant's Sentencing Memorandum," at Cr:DE28), as well as the aforementioned rulings by the Eleventh Circuit and United States Supreme Court.

## II   THE MOVANT'S CLAIMS

In his §2255 motion form (Cv:DE1, ¶¶12A, B) the Movant frames his claims in terms of 2 Grounds for Relief, as follows, *verbatim*:

**A. Ground one:**          **The Movant Mitchell is Actually Innocent of the Sentencing Enhancement.**

Supporting facts:          The Movant Mitchell states that neither of his prior state drug convictions pursuant to 893.13 could not be use for enhancement, due to neither of Mitchell's prior convictions falls under Title 21 United States Code drug statute.

2

**B. Ground two:**       **The Movant Mitchell is Entitled to a Downward Departure Pursuant to the New Crack/Powder Amendment**

**Supporting facts:**     At the time of Mitchell's arrest and Grand Jury's indictment, he was sentenced under the crack cocaine method and since his sentence, the Fair Sentence Act eliminated the statutory penalties for crack cocaine in which he is entitled to a sentence reduction pursuant to the the Ex Post Facto Clause.

(§2255 form, Cv:DE1 p.4; Grounds at ¶¶12A & 12B of the Motion). The §2255 form included at ¶13 a standard instruction to Movants: "If any of the grounds listed in 12A, B, C, or D were not previously presented, state briefly what grounds were not presented and give your reasons for not presenting them." In response thereto the Movant Mitchell wrote: "Neither of these grounds was raised due to counsel's ineffectiveness or limited knowledge." (Cv:DE1 ¶13).

In his typewritten Motion/Memorandum (Cv:DE5) Movant Mitchell re-frames his Grounds for relief in terms of 5 grounds (labeled Grounds I, II, III, IV and V) with a heading/sub-claim labeled "a" under Ground I, and a heading/sub-claim labeled "b" under Ground III. These Grounds are couched as follows, *verbatim*:

**Ground I:**       **Movant is Actualy Innocent of the Sentencing Enhancement under 4B1.1 of the United States Sentencing Guidelines**

      **a.**    **Shelton And 994(h)**

**Ground II:**      **Mr. Mitchell's Prior Florida Drug Convictions In Violation Of Fla. Stat. §893.13 Do Not Fall Within the Definition Of A Controlled Substance As Defined In 4B1.1 or 994(h)(2) Following <u>Shelton v. Dept. of Corrections</u>, 812 [sic] F.Supp 2d _, Lexis 86898 (M.D.Fla. 2011)[1]**

**Ground III:**     **Mr. Mitchell Attorney was Ineffective When He Failed To Argue At Sentencing Mitchell Prior Drug Charges Could Not Be Used To Enhance His Federal Sentence Because They**

---

[1] The correct citation for <u>Shelton</u> is 802 F.Supp.1289 (M.D.Fla., 2011).

3

                        Were "Strict Liability" Offenses And That They Did Not Meet the Requirements Under Federal Law for Enhancement

      **b.**    **Mr. Mitchell Attorney Was Ineffective When He Failed To Argue Ground I and Ground II Listed In This Petition**

**Ground IV:**    **Mr. Mitchell Attorney Was Ineffective At Sentencing In Which His Deficient Conduct Caused Mr. Mitchell To Suffer A Due Process Violation At Sentencing**

**Ground V:**    **Mr. Mitchell Is Entitled To Be Resentenced Based Upon The Fair Sentencing Act According To The Amount Of Crack Cocaine He Was Charged With**

(See Motion/Memorandum Cv:DE5, at pp. 2-14).

## III    DISCUSSION

As specified in the Indictment, Mitchell's federally charged drug transactions [which led to his 12/8/09 arrest,[2] and his 2/17/10 plea and 5/7/10 sentencing in Case 08-60252-Cr-COHN] occurred on 4/8 and 4/10/08. As reflected in the PSI and the Stipulated Factual Basis, the 4/8/08 transaction involved 0.57 grams of cocaine base, and the 4/10/08 transaction involved 4.1 grams of cocaine base, for a total weight of 4.67 grams. The applicable version of the Guidelines Manual for purposes of Mitchell's PSI and Sentencing was the 2009 Guidelines Manual. Had Mitchell's Offense Level calculation been driven by the drug quantity attributed to him, his Base Offense Level ("BOL") under USSG §2D1.1(a)(5) would have been 22, which is the BOL assigned to possession with intent to distribute at least 4 grams but less than

---

[2]    As reflected in the Mitchell's PSI, his criminal case [09-Cr-60252] was one of 6 related cases, involving well over a dozen individuals, which arose from *Operation Baby's Drama*. As part of the operation, the Hallandale Police Department ("HPD") and the Drug Enforcement Administration ("DEA") jointly conducted an investigation [from 2006, continuing into 2009] of persons selling/distributing crack cocaine in the Hallandale Beach area. The operation continued until well after Mitchell's last charged criminal sale of crack cocaine, and thus he was not arrested until 2009 so as to not jeopardize the success of the operation. (See PSI ¶¶3-15).

5 grams of cocaine base. Mitchell's Offense Level, however, was not determined and controlled by the drug quantity in his case. This is because, pursuant to USSG §4B1.1(a), he qualified as a Career Offender due to his history of prior convictions, which established that he had at least two prior felony convictions of a controlled substance offense or a crime of violence.

In Mitchell's case, where the attributed drug quantity was less than 5 grams of cocaine base, then pursuant to 21 U.S.C. §841(b)(1)(C), he faced a 20-year statutory maximum sentence, but no statutory mandatory minimum. As a Career Offender, pursuant to §4B1.1(b) his Base Offense Level was automatically 32. With a 2-level downward adjustment pursuant to §3E1.1(a), for Acceptance of Responsibility, and an additional 1-level downward adjustment pursuant to §3E1.1(b) for assisting authorities in the investigation of his own misconduct and timely notifying them of his intent to plead, his Total Offense Level became 29. Based on his prior criminal history Mitchell had 17 Criminal History points which, if controlling, would have put him in Criminal History Category VI. Mitchell, however, automatically fell into Criminal History Category VI. This was because he qualified as a Career Offender, and USSG §4B1.1(b) states in pertient part that: "A career offender's criminal history category in every case under this subsection shall be Category VI." With Criminal History Category VI and Total Offense Level 29, Mitchell's advisory sentencing guideline range was 151-188 months imprisonment. (See PSI and SOR, Sentencing Transcript, and USSG Sentencing Table).

Mitchell argues that he should not have been deemed a Career Offender whose BOL was automatically 32. He reasons (incorrectly) that his BOL should have been 22, that with the §3E1.1(a) and (b) reductions his Total Offense Level should have been 19, and that if his Criminal History Category was VI [based on criminal history points, and not automatic assigment of Category VI as a Career

5

Offender] his advisory sentencing guideline range should have been 63-78 months [and not 151-188 months, as was determined].

Despite his protestation to the contrary, for reasons discussed in this Report, below, Mitchell did properly qualify as a Career Offender. USSG §4B1.1(b) sets out the parameters for Career Offender status.  The provision reads as follows, *verbatim*:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG §4B1.1(a)

In this case, Mitchell, who was born on 8/9/78, was an adult when he committed the federal drug offenses on 4/8 and 4/10/08 for which he was convicted in Case 08-60252-Cr-Cohn. Each of Mitchell's two federal convictions was for a felony "controlled substance offense" [because, as defined under §4B1.2, they were punishable by more than 1-year of imprisonment under federal law prohibiting "the manufacture, import, export, distribution, or dispensing of a controlled substance."]. Thus, where elements 1 and 2 of §4B1.1(a) were satisfied, the question which remains is whether the third element of §4B1.1(a) [requiring that the defendant have "at least two prior felony convictions of either a crime of violence or a controlled substance offense"] was satisfied in his case.

Based on Mitchell's history of prior convictions (see PSI at "PART B. THE DEFENDANT'S CRIMINAL HISTORY"), it is clear [as discussed below] that he had more than the required two predicate prior felony convictions "of either a crime of violence or a contolled substance offense," and that the third element under §4B1.1(a) for assignment of Carrer Offender status also was

6

satisifed in Mitchell's case.

As reflected in the PSI, Mitchell was deemed a Career Offender under §4B1.1(a) because: he was over 18 when he committed the instant offenses [those in Case 08-60252-Cr-Cohn]; his instant offenses qualified as a "felony controlled subtance offense;" and last, he had "at least two prior felony convictions of a controlled substance offense or a crime of violence." For satisfaction of the last requirement, the PSI listed 6 prior state convictions as predicate offenses to support the finding that Mitchell qualified as a Career Offender.(See PSI ¶27).

The first three convictions listed as predicate offenses for assigning Mitchell "Carrer Offender" status, although committed in May 1995 [when Mitchell was about 16 years and 8½ months old] and July 1995 [when he was about 16 years and 11 months old], did not result in his convictions for those crimes until 3/3/98 when he was already 19 years and 6 months of age. Accordingly in the PSI, those first 3 prior Offenses were listed under "Adult Criminal Convictions." (See PSI at pp.8-9, at PSI ¶¶33, 34, and 35).

The pertinent information pertaining to those three initial convictions, as set out in the PSI, is as follows:

| Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition | Guideline/ Points |
|---|---|---|---|
| 33. 5/12/95 (age 16) | Delivery of Cocaine, Hallandale Police Dept., Hallandale, FL | Dkt.#95-16931CF10A, 3/3/98: 875 days imprisonment with credit for 875 days time served, concurrent with 95-16932CF10A and 95-12280CF10B | 4A1.1(a)  3 |

The defendant was one of several defendants who were arrested by law enforcement after having been observed conducting crack cocaine transactions with a confidential informant.

| | | | |
|---|---|---|---|
| 34. 5/12/95 (age 16) | Delivery of Cocaine, Hallandale Police Dept., Hallandale, FL | Dkt.#95-16932CF10A, 3/3/98: 875 days imprisonment with credit for 875 days time served, concurrent with | 4A1.2(a)(2) |

```
                              95-16931CF10A and
                              95-12280CF10B                              0
     The defendant was one of several defendants who were arrested by law
     enforcement after having been observed conducting crack cocaine
     transactions with a confidential informant.


35. 7/27/95   Murder in 1st Degree,   Dkt.#95-12280CF10B          4A1.1(a)
   (age 16)    Brow.Sheriff's Office,    3/3/98: Pled guilty to
                                       lesser included offense of
                                       manslaughter with a deadly
                                       weapon, 9 years imprisonment,
                                       with credit for 948 days time
                                       served, concurrent with
                                       95-16931CF10A and
                                       95-16932CF10A
                                       3/17/02: Released            3


     On July 12, 1995, the defendant and two co-defendants killed victim
     Eric Jackson by shooting him with a firearm.
```

(See PSI at pp.8-9, PART B., ¶¶ 33-35).

The other three convictions listed as predicate offenses for assigning Mitchell "Carrer Offender" status [committed in November 2002, and January and February 2003, when he was 24 years of age], resulted in convictions for those offenses on 9/29/03.  Those three offenses are also listed in the PSI under "Adult Criminal Convictions." (See PSI at pp.10-11, at PSI ¶¶37, 39, and 40).

The information pertaining to these three convictions, as set out in the PSI, is as follows:

| Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition | Guideline/ Points |
|---|---|---|---|
| 37. 11/12/02 (age 24) | Possession of Cocaine w/ Intent to Deliver or Sell, Hallandale Police Dept., Hallandale, FL | Dkt. #02-20262CF10A, 9/29/03: 42.45 months imprisonment, with credit for 183 days time served, concurrent with 03-2707CF10 and 03-4358CF10 | 4A1.1(a)<br><br>3 |

Law enforcement observed the defendant make a suspected narcotics transaction with an unknown black male who arrived onthe scene on a bicycle. A police officer approached the area where the transaction

8

had occurred and located a large plastic bag hidden on top of a vehicle's wheel well, which contained four large pieces of crack cocaine. The defendant was placed under arrest.

| | | | | |
|---|---|---|---|---|
| 39. | 1/16/03<br>(age 24) | Ct 1: Possession of<br>Cocaine w/Intent to<br>Sell or Deliver,<br>Ct. 2: Resist/Obstruct<br>w/o Violence,<br>Hallandale Police Dept.,<br>Hallandale, FL | Dkt.#03-4358CF10A,<br>9/29/03: Ct.1: 42.45 months<br>imprisonment, with credit for<br>183 days served,<br>concurrent with 02-20262CF10<br>and 03-2707CF10, Ct.2, 183<br>days county jail, with credit<br>for 183 days time served<br>4/1/06: Released | 4A1.1(a)<br><br><br><br><br><br><br>3 |

The defendant and an unknown black male were observed in a narcotics transaction. Law enforcement approached the scene and observed the defendant with a crack cocaine rock laying on the palm of his hand. The defndant fled the scene and a foot pursuit ensued. As the defendant fled, he was observed discarding several pieces of crack cocaine to the pavement. The crack cocaine wasimmediately retrieved. The police officer continued the pursuit of the defendant after retrieving the crack cocaine rocks and lost sight of the defendant. The defendant was subsequently arrested after an area search.

| | | | | |
|---|---|---|---|---|
| 40. | 2/7/03<br>(age 24) | Possession of Cocaine w/<br>Intent to Sell or Deliver,<br>Hallandale Police Dept.,<br>Hallandale, FL | Dkt. #03-2707CF10A,<br>9/29/03: 42.45 months<br>imprisonment, with credit<br>for 183 days time served,<br>concurrent with 03-4358CF10<br>and 02-20262CF10<br>4/1/06: Released | 4A1.1(a)<br><br><br><br><br>3 |

Law enforcement received information from a confidential informant (CI) that the defendant would deliver crack cocaine. The defendant agreed to deliver one ounce of crack cocaine to the CI. The defendant and the CI met at an agreed location where the defendant was taken into custody. Incident to his arrest, a large bag of crack cocaine was found in the defendant's left rear pocket.

(See PSI at pp.8, and 10-11, PART B., ¶¶ 37, 39, 40).


### A.   Mitchell Had Sufficient Predicate Offenses to Qualify Him as a Career Offender

As noted, Mitchell's six prior offenses identified at PSI ¶27 were listed as adult convictions. (PSI ¶¶ 33, 34, 35, 37, 39, 40).

Even if the Mitchell's three convictions listed in PSI ¶¶ 33, 34 and 35 are not analyzed and considered here, he clearly had at

least two prior convictions for "a controlled substance offense" so as to qualify him as a Career Offender. As shown in PSI ¶¶ 37, 39 and 40, Mitchell had three convictions for which he was sentenced on 9/29/03, each of which was for Possession of Cocaine with Intent to Deliver or Sell. Those offenses, although sentenced on the same day (with concurrent 42.45 month terms imposed for all three), were committed by Mitchell when he was an adult, on separate dates; and they were charged as separate cases under separtate Docket Numbers. These were the 11/12/02 transaction charged in Dkt. #02-20262CF10A; the 1/16/03 transaction charged in Dkt. #03-4358CF10A, and the 2/7/03 transaction charged in Dkt. #03-2702CF10A.

It is evident that these three prior convictions of Mitchell for "Possession with Intent to Deliver/Sell Cocaine," for which he was sentenced on 9/29/03, arose from different arrests, were for distinct offenses committed separate in time, and that each of them was properly considered a predicate offense for purposes of the enhancement.[3]

---

[3]    It matters not that Mitchell's three cases were consolidated for sentencing. Cf United States v. Ubele, No. 06-13079, 215 Fed.Appx. 971, 973, 2007 WL 295587, at *2 (11 Cir., Feb. 2, 2007) (the defendant, to qualify as an armed career criminal, must violate 18 U.S.C. § 922(g) and have "three previous convictions by any court ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Enhancement under the statute requires three temporally distinct crimes, but convictions need not be obtained on separate occasions) (citing United States v. Jackson, 57 F.3d 1012 (11 Cir.1995, and United States v. Pope, 132 F.3d 684 (11 Cir.1998)).

In Jackson, supra, the defendant Stanley Jackson who was convicted in federal court of possessing and receiving a firearm as a convicted felon, was found to qualify for enhancement as an Armed Career Criminal where his history of prior convictions showed that he had previously plead guilty to 5 counts of robbery by assault, based on 5 separate robberies committed over a 2 month period, for which he received concurrent sentences. The Eleventh Circuit found that the prior convictions counted as predicate offenses. United States v. Jackson, supra, 57 F.3d at 1018 ("[S]o long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA.").

## B.   <u>Analysis of the Movant's Claims</u>

Discussion will now turn to Mitchell's claims, as framed by him in his Motion/Memorandum (Cv:DE5).

### <u>Ground I of the Motion/Memorandum (Cv:DE5)</u>

In his first ground (captioned "Ground I" at Cv:DE5 pp.2-3), the essence of Mitchell's claim (<u>Id</u>. at pp.2-7) is the contention that he is "actually innocent" of the sentencing enhancement under §4B1.1, because his prior Florida drug convictions [for delivery of cocaine, and possession with intent to deliver/sell cocaine] listed in the PSI as a basis for deeming him a Career Offender, did "not fall within Title 21 drug offenses as mentioned in 28 U.S.C. Section §994(h)."

The provision of Title 28, Section 994, to which Mitchell refers, reads, as follows.

> (h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and--
>
> (1) has been convicted of a felony that is--
>
> (A) a crime of violence; or
>
> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections

---

In <u>Pope</u>, <u>supra</u>, the Eleventh determined that even though the defendant Clifford Pope's prior offenses had been charged together, and sentenced at the day, they counted as separate offenses for purposes of federal sentencing enhancement. <u>United States v. Pope</u>, <u>supra</u>, 132 F.3d at 692 (although Pope's prior offenses -- two 1975 burglaries committed 200 yards apart -- occured close in time, and were charged in the same indictment, and sentenced at the same time, they are two separate episodes for purposes of the ACCA because the crimes were successive rather than simultaneous and constituted distinct criminal episodes).

1002(a), 1005, and 1009 of the Controlled
Substances Import and Export Act (21 U.S.C. 952(a),
955, and 959), and chapter 705 of title 46; and

(2) has previously been convicted of two or more
prior felonies, each of which is--

(A) a crime of violence; or

(B) an offense described in section 401 of the
Controlled Substances Act (21 U.S.C. 841), sections
1002(a), 1005, and 1009 of the Controlled
Substances Import and Export Act (21 U.S.C. 952(a),
955, and 959), and chapter 705 of title 46.

(28 U.S.C. §994(h)).

Mitchell argues that cocaine convictions [like his Florida
convictions listed in his PSI at ¶¶33, 35, 37, 39 and 40] were not
among offenses specifically described in 28 U.S.C. §994(h)(1)(B).
He thus reasons that they are not among predicate offenses that may
qualify a defendant for Career Offender status. Mitchell concludes,
therefore, that he is entitled to have his sentence corrected.

This argument raised in support of Mitchell's "Ground I" is
specious; it has been rejected by the Courts, and Mitchell is
entitled to no relief on the claim. See United States v. Weir, 51
F.3d 1031, 1032 (11 Cir.1995)(Holding, as follows: "First, although
the commentary to section 4B1.1 states that the career offender
provision is implementing the mandate of 28 U.S.C. § 994(h), it
does not suggest that section 994(h) is the only mandate for that
provision. 28 U.S.C. § 994(a), the Guidelines' enabling statute,
provides independent grounds for the career offender provision, and
the language of this section grants sufficient authority to the
Commission to include drug conspiracies in its definition of
controlled substance offenses. Second, the legislative history
indicates that the specific offenses listed in section 994(h) are
not necessarily exhaustive. Finally, common sense dictates that

12

conspiring to distribute drugs constitutes a controlled substance offense. See United States v. Kennedy, 32 F.3d [876, 888 (4ᵗʰ Cir.) cert. denied, 513 U.S. 1128 (1994)], citing S.Rep. No. 225, 98th Cong., 2d Sess. 176 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3359; United States v. Parson, 955 F.2d 858, 867 (3d Cir.1992).”); and see United States Mills, No. 06-4776, 485 F.3d 219, 224-225 (4 Cir., May 7, 2007)(rejecting Appellant Mills’ argument that his convictions [for simulated drugs] did not qualify as predicate offenses under the career offender Sentencing Guidelines because those crimes are not enumerated in Section 994(h) of Title 28).[4]

---

[4]      In Mills the Appellant’s claim, and the reasoning by the United States Court of Appeals for the Fourth Circuit for rejecting it, read as follows:

In a last effort to avoid the logical consequences of the Guidelines' omission of any reference to § 802(7), Mills argues that simulated drug convictions do not qualify as predicate offenses under the career offender Sentencing Guidelines because those crimes are not enumerated in Section 994(h) of Title 28. That provision, which authorizes the Sentencing Commission to formulate the career offender provisions of the Sentencing Guidelines, provides that the offenses described within the Controlled Substances Act, see 21 U.S.C. § 841, qualify as predicate offenses. 28 U.S.C. § 994(h) (2000). Mills thus claims, because the Controlled Substances Act does not regulate the distribution of simulated controlled substances, that Section 994(h) evidences Congress' intent to exclude look-a-like convictions from the career offender Guidelines.

We disagree. The fact that Congress delineated some crimes that qualify as predicate offenses under Section 4B1.1 does not prohibit the Sentencing Commission from promulgating guidelines that reach other offenses too. To the contrary, the Commission has authority to “depart, as need be, from the Controlled Substances Act's definition of controlled substance offense (and, in turn, counterfeit controlled substance), in order to avoid sentencing disparities.” Crittenden, 372 F.3d at 709. As the background notes to Section 4B1.1 explain, such modification is consistent with the Commission's “general guideline promulgation authority under 28 U.S.C. § 994(a)-(f), and its amendment authority under 28 U.S.C. § 994( o) and (p).” U.S.S.G. § 4B1.1 (background).

Moreover, to adopt defendant's view-that only those offenses listed in Section 994(h) qualify as predicate offenses for purposes of Section 4B1.1-would mean that the Commission had

13

## **Sub-claim "a" Under Ground I of the Motion/Memorandum (Cv:DE5)**

Mitchell includes as a sub-claim under Ground I, an argument based on Shelton v. Dep't of Corr., 802 F.Supp.1289 (M.D.Fla., 2011). He observes that in its 2011 decision in Shelton the Middle District of Florida [the Honorable Mary S. Scriven, United States District Judge] found Fla.Stat. §893.13 to be unconstitutional. Here, in his present §2255 action, the Movant Mitchell now argues that "if the Shelton findings are true," his state drug offenses should not have been used for enhancement purposes.

[Here, it is is noted that in this sub-claim "a," in addition to his "Shelton argument," Mitchell repeats his argument from "Ground I" (Cv:DE5 p.in Cv:DE5) that his Florida cocaine convictions listed in the PSI as predicate offenses for Career Offender status "did not fall under the Controlled Substance Act of Title 21, as listed in Title 28 U.S.C. §994(h) and 4B1.1." The reiterated argument based on his interpretation of the language from 28 U.S.C. §994(h) is without merit, as discussed supra. It is further noted that, in sub-claim "a," besides repeating his substantive argument, Mitchell also argues that his attorney was ineffective because he

---

exceeded its authority by including other narcotics-related offenses. See Crittenden, 372 F.3d at 709. To begin with, Section 994(h) makes no mention of state drug offenses at all; but no one disputes that state law convictions for violent felonies and controlled substance felonies are within the ambit of the career offender Guidelines. Likewise, defendant's reading of the statute would invalidate the Commission's inclusion of "the offenses of aiding and abetting, conspiring, and attempting to commit" controlled substance offenses, see U.S.S.G. § 4B1.2 (application note 1), since those offenses are altogether absent from the dictates of Section 994(h). In light of the Commission's authority to modify the guidelines in order to "avoid unwarranted sentencing disparities" and to "focus more precisely" on "recidivist offenders," U.S.S.G. § 4B1.1 (background), we decline defendant's invitation to so substantially rewrite the career offender provisions of the Sentencing Guidelines.

Mills, supra, 485 F.3d at 224-225 .

14

did not "stop the Court from erroneously using his state drug convictions...[on grounds that they did not fall under the Controlled Substance Act (21 U.S.C. §841), as listed in 28 U.S.C. §994(h)].  This ineffective assistance claim from Ground I, sub-claim "a," is repeated by Mitchell in section "b" of "Ground III" of his Motion (see Cv:DE5 pp.8-10). This ineffective assistance claim therefore will not be analyzed here, but instead will be addressed in the discussion of Ground III, below.].

Returning to Mitchell's claim that the July 27, 2011 Shelton decision from the Middle District of Florida provides him a basis for §2255 relief, this Court finds that he is mistaken.

It is Mitchell's argument that Shelton found Fla.Stat. §893.13 to be unconstitutional; and it is his assumption/conclusion that since his Florida cocaine convictions listed in the PSI as predicate offenses for his Career Offender status were §893.13 offenses, those state convictions are invalid and cannot properly have been relied upon to deem him a Career Offender.

At the time that Mitchell was convicted and sentenced in 2010, the Middle District of Florida opinion in Shelton of course had not been rendered. The Shelton opinion was released on 7/27/11, 13 months after Mitchell's sentencing, 7 months after his judgment was affirmed on direct appeal, and about 2 months after he was denied certiorari review by the U.S. Supreme Court.

A procedural background relating to Fla.Stat. §893.13, leading up to the 2011 Middle District decision in Shelton, was succinctly summarized by the Florida 3rd DCA in its decision in State v. Washington, No. 3D11-2244, 2012 WL 2400879, at *1-2 (Fla. 3 Dist., June 27, 2012).

The June 27, 2012 Florida 3rd DCA decision in Washington was

15

an appeal from a decison involving dozens of defendants by the Honorable Milton Hirsch, Circuit Judge of the Eleventh Judicial Circuit of Florida, at Miami-Dade County. [Circuit Judge Hirsh, had "presumed" that prior Florida District Court cases raising constitutional challenges to Fla.Stat. §893.13 were decided on state constitutional due process grounds, not federal constitutional due process grounds; concluded that those cases were not binding on him; and instead concluded that he was bound by the U.S. District Court for the Middle District of Florida's decision in Shelton. On appeal, an August 2011 decision involving the 39 defendants in Washington, et al., was reversed some 10 months later in State v. Washington, No. 3D11-2244, ____ So.3d ____, 2012 WL 2400879 (Fla. 3 Dist., June 27, 2012)].[5]

The underlying procedural history relating to §893.13, as set out in the Appellate Court opinion in State v. Washington, 2012 WL 2400879, read as follows, *verbatim*:

---

[5]     The Florida 3rd DCA on 6/27/2012, in reversing the Dade Circuit Court's decision in Washington, summarized the basis of its ruling, as follows:

On May 17, 2006, this Court issued its opinion in Taylor v. State, 929 So.2d 665 (Fla. 3d DCA 2006), review denied, 952 So.2d 1191 (Fla.2007), rejecting Taylor's facial constitutional challenge to section 893.13, Florida Statutes (2003), as amended by section 893.101, Florida Statutes (2003). Nearly five years later, the trial court below dismissed criminal felony charges against thirty-nine defendants and issued a lengthy order attempting to justify its decision to ignore Taylor, as well as other binding decisions from the district courts of appeal in this state, and instead, to adopt a contrary, non-binding decision issued by a federal trial court judge. In reversing the order under review, we reject the trial court's contention that the issues raised in the instant cases were not previously raised and decided by this Court; reject the trial court's conclusion that it was bound by the federal trial court's decision; and agree with counsel for both the appellant and the appellees that the trial court's analysis and reasoning is flawed.

State v. Washington, supra, 2012 WL 2400879, at *1

16

Section 893.13 prohibits the unauthorized possession, purchase, sale, manufacture, or delivery of a controlled substance; and the possession with intent to purchase, sell, manufacture, or deliver a controlled substance. In 2002, in response to the Florida Supreme Court's interpretation of the statute in <u>Chicone v. State</u>, 684 So.2d 736 (Fla.1996), and later in <u>Scott v. State</u>, 808 So.2d 166 (Fla.2002), in which it held that knowledge of the nature of the substance was an element of these drug offenses, the Florida legislature enacted section 893.101.

893.101 **Legislative findings and intent.—**

(1) The Legislature finds that the cases of Scott v. State, Slip Opinion No. SC94701 [808 So.2d 166] (Fla.2002) and Chicone v. State, 684 So.2d 736 (Fla.1996), holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.

(2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.

(3) In those instances in which a defendant asserts the affirmative defense described in this section, the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance. It is the intent of the Legislature that, in those cases where such an affirmative defense is raised, the jury shall be instructed on the permissive presumption provided in this subsection.

After the legislature's clarification of its legislative intent, that knowledge of the nature of the substance is not an element of the offense, but rather an affirmative defense that may be raised by the defendant, constitutional due

process challenges were raised and ultimately rejected by the appellate courts across the state. *See e.g.*, <u>Williams v. State</u>, 45 So.3d 14 (Fla. 1st DCA 2010); <u>Johnson v. State</u>, 37 So.3d 975 (Fla. 1st DCA 2010); <u>Harris v. State</u>, 932 So.2d 551 (Fla. 1st DCA 2006); <u>Taylor</u>, 929 So.2d at 665; <u>Tolbert v. State</u>, 925 So.2d 1148 (Fla. 4th DCA 2006); <u>Wright v. State</u>, 920 So.2d 21 (Fla. 4th DCA 2005); <u>Smith v. State</u>, 901 So.2d 1000 (Fla. 4th DCA 2005), review denied, 928 So.2d 336 (Fla.2006); <u>Burnette v. State</u>, 901 So.2d 925 (Fla. 2d DCA 2005).

<u>State v. Washington</u>, <u>supra</u>, 2012 WL 2400879 at *1-2.

In <u>Shelton</u>, <u>supra</u> [802 F.Supp.2d 1289] ("<u>Shelton</u> I") the petitioner Mackle Vincent Shelton had brought §2254 federal habeas petition in the Middle District of Florida challenging the consitutionality of Fla.Stat. §893.13, as amended in 2002, which (as discussed above) eliminated *mens rea* as an element of drug distribution offenses. The court (Judge Scriven) analyzed the statute's constitutionality under the three-part test established in <u>Staples v. United States</u>, 511 U.S. 600 (1994). The Court found that although lack of knowledge is an affirmative defense to the offenses in section 893.13, because the statute did not include knowledge of the illicit nature of the substance as an element of the offense, the statute created strict liability crimes; and the Court concluded that the statute violated federal constitutional due process, and granted petitioner Shelton §2254 relief on 7/27/11.

In 2011, however, several Florida courts rejected constitutional challenges to the statutory scheme at issue in <u>Shelton</u>. *See, e.g.*, <u>Little v. State</u>, 77 So.3d 722 (Fla.3 Dist.2011); <u>Maestas v. State</u>, 76 So.3d 991 (Fla.4 Dist.2011); <u>Adams v. State</u>, 76 So.3d 367 (Fla.3 Dist.2011); <u>Flagg v. State</u>, 74 So.3d 138, 140 (Fla.1 Dist. 2011). Also, in a separate case from the Middle District of Florida, the Honorable James S. Moody, Jr., United States District Judge, a colleague of Judge Scriven who ruled in <u>Shelton</u>, concluded

18

that contrary to <u>Shelton</u>, the 2002 amendment to Fla.Stat. §893.13 "does not result in a facially unconstitutional" statute. <u>United States v. Bunton</u>, No. 8:10-cr-327-T-30EAJ, 2011 WL 5080307, at *9, 2011 U.S. Dist. LEXIS 123945, at *3 (M.D.Fla. Oct. 26, 2011)(noting criticism of <u>Shelton</u> decision, observing that "[t]he main shortcoming in the Florida courts' criticism of Shelton is that they do not address the federal due process concerns in any detail," distinguishing offense at issue in <u>Shelton</u> as involving delivery of illegal substance and not possession, and ultimately concluding §893.13 is not facially unconstitutional because, even without *mens rea* requirement, it satisfies due process because State must still prove defendant had knowledge of his possession of substance).

Finally, it is noted that more recently, in August 2012, the Eleventh Circuit, upon consideration of the State's appeal in <u>Shelton</u>, in an August 24, 2012 opinion ("<u>Shelton</u> II") reversed the grant of §2254 relief in "<u>Shelton</u> I." <u>Shelton v. Sec'y Dept. Of Corr.</u>, No. 11-13515, 2012 WL 3641008 (11 Cir., Aug.24, 2012) (holding that the district court's "fail[ure] to accord deference to the state court decision" violated the AEDPA).

Here, the Petitioner Mitchell cannot prevail based on the July 2011 Middle District decision in "<u>Shelton</u> I," as that decision was overturned, and is no longer good law. Moreover, the Middle District decision in <u>Shelton</u>, if undisturbed, would not have been be binding on this Court. Nor would it have been binding on the Florida Courts. <u>See</u> <u>State v. Dwyer</u>, 332 So.2d 333, 335 (Fla. 1976) ("Even though lower federal court rulings may be in some instances persuasive, such rulings are not binding on state courts").

Finally, it is noted that the Florida Supreme Court in July 2012 ruled that <u>Fla.Stat</u>. §893.13 is not facially unconstitutional. <u>See</u> <u>State v. Adkins</u>, 96 So.3d 412, 423, 2012 WL 2849485, at *10 (Fla., July 12, 2012) (upholding §893.13 as constitutional under

the due process requirements as articulated by that court and the
U.S. Supreme Court; holding that shifting the *mens rea* requirement
to the defendant as an affirmative defense violates no "requirement
of due process articulated by this Court or the [United States]
Supreme Court.").

In light of the above, the Movant Mitchell's argument in
Ground I "a" of his §2255 Motion [i.e., that <u>Fla.Stat.</u> §893.13 was
determined to be unconstitutional by the 2011 Middle District
decision in <u>Shelton</u> ("<u>Shelton</u> I"), and that his Florida cocaine-
related convictions listed in his PSI at ¶27 as a basis for deeming
him a Career Offender are invalid] must fail.

### <u>Ground II of the Motion/Memorandum (Cv:DE5)</u>

In Ground II of his Motion/Memorandum (Cv:DE5 pp.7-8) Mitchell
argues that USSG §4B1.2(b) includes language defining a "controlled
substance offense" as one that prohibits "...possession of a
controlled substance...with **intent** to manufacture, import, export,
distribute or dispense." [Emphasis added]. Mitchell argues that the
Middle District in <u>Shelton</u> ("<u>Shelton</u> I") held that §893.13 as
amended in 2002 created strict liability crimes. Mitchell reasons
that §4B1.2(b) defines a "controlled substance offense" as one
requiring **intent**, and argues that, *a fortiori,* his §893.13
convictions cannot be "controlled substance offenses" for purposes
of the guidelines and assignment of Career Offender status.

This argument is undermined by the explantation and analysis
provided by Florida's Third District Court of Appeal in its 6/27/12
opinion in <u>State v Washington</u>, <u>supra</u>, finding that <u>Fla.Stat.</u>
§893.13 does not create "strict liability" crimes. Therein,
Florida's 3rd DCA stated, in pertinent part, as follows:

> A strict liability statute imposes criminal liability
> regardless of fault. For example, statutory rape is a strict
> liability crime. See §§ 794.05, .021, Florida Statutes (2012);
> Hodge v. State, 866 So.2d 1270, 1272 (Fla. 4th DCA 2004)

("[T]he legislature left no doubt as to its intention that [section 794.021] be treated as a strict liability crime for which the State was not required to prove scienter ... [and] unequivocally provides that ignorance is not a defense to the crime [.]"). Under section 794.05, "[a] person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree." These statutes do not require the State to prove the defendant's knowledge of the minor's age, and ignorance or belief as to the minor's age is no defense.

Section 893.13 does not create strict liability crimes because, although scienter, or "mens rea," is not an element of these offenses, the statute provides that the defendant's lack of knowledge may be raised as an affirmative defense. See Flagg v. State, 74 So.3d 138, 141 (Fla. 1st DCA 2011). For a strict liability offense, lack of knowledge is not an available defense. See Kennedy v. Louisiana, 554 U.S. 407, 423, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (concluding that because mistake regarding the minor's age was not a defense, the statute imposed strict liability); Levinson, Laurie L., Good Faith Defenses: Reshaping Strict Liability Crimes, 78 Cornell L. Rev. 401, 417 & n. 86 (1993) (defining strict liability as "absolute liability" where not only is there no mens rea element, there also is no mens rea defense).

Section 893.13, instead, creates general intent crimes. See Wright, 920 So.2d at 24 ("The statute does two things: it makes possession of a controlled substance a general intent crime ... and, second, it allows a defendant to assert lack of knowledge as an affirmative defense."). Because, the premise upon which the trial judge relied was incorrect, so too was his analysis.

State v Washington, supra, 2012 WL 2400879, at *5.

For the above stated reasons, Mitchell's arguments in Ground II are without merit, and his claims therein fail.

### Ground III of the Motion/Memorandum (Cv:DE5)

In Ground III of his Motion/Memo (Cv:DE5 pp.9-10) Mitchell argues that his attorney provided ineffective assistance for not raising the claims which he [Mitchell] now raises in Grounds I and

II of his §2255 Motion.  This Ground fails.  To the extent that Movant Mitchell's Motion includes claims of ineffective assistance of counsel, they are governed by principles enunciated <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and its progeny.[6]

Here, where the substantive claims raised by Mitchell in Grounds I and II of the Motion/Memorandum (Cv:DE5) are without merit for reasons discussed <u>supra</u>, Counsel cannot be deemed ineffective for failing to make arguments or raise objections based on those grounds/claims. <u>See</u> <u>Knowles</u> and <u>Chandler</u>, <u>supra</u>.

### Ground IV of the Motion/Memorandum (Cv:DE5)

In Ground IV of his Motion/Memorandum (Cv:DE5), Mitchell argues that Counsel was ineffective for not aruging that his prior Florida drug convictions could not be used to determine that he was a Career Offender. He claims that counsel's failure to make the argument resulted in his been sentenced as a Career Offender, thereby denying him due process, because, according to Mitchell, counsel's omission prevented the court from exercising its

---

[6]      In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance – that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice – but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland</u>, <u>supra</u>, 466 U.S. at 688, 694; <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir.2000)(<u>en banc</u>). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir.1995). Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir.1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir.1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir.1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994). Counsel has no duty to raise claims or defenses which have little or no chance of success. <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S.Ct. 1411, 1418, n.2, 173 L.Ed.2d 251 (2009)(the law does not require counsel to raise every available non-frivolous defense; <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11 Cir. 2001) (counsel not ineffective for failing to raise <u>non-meritorious</u> objection).

discretion to impose a lesser sentence.

The claim is without merit; and Mitchell was not deprived of due process.

First, where Mitchell was properly found to be a Career Offender [as repeatedly noted above], counsel cannot be deemed ineffective for not arguing that his prior state offenses were not qualifying convictions. Counsel is not required to make arguments that are meritless, or that have little or no chance of success. Knowles and Chandler, supra. Despite his argument to the contrary, Mitchell cannot prevail on a claim that counsel's failure to argue that his Florida drug convictions were "non-usable," because he had at least 2 prior predicate convictions to qualify him for Career Offender status. Accordingly, Mitchell's proper Base Offense Level was 32, and with §3E1.1 reductions hs proper Base Offense Level was 29. As a Career Offender, his Criminal History Category was automatically VI. Thus, his advisory sentencing guideline range of 151-188 months also was correct.

Mitchell claims that counsel's failure to argue that his state drug convictions were not proper predicate offenses to declare him a career offender had the effect of preventing the sentencing judge from exercising his discretion to impose a lesser sentence. This claim too is without merit. Examination of counsel's Objections to the PSI/Sentencing Memorandum, and counsel's aruguments at the sentencing hearing reflect that counsel indeed vigorously arued, on his client Mitchell's behalf, that the Court should consider departing downward. Counsel argued that Mitchell's earliest offenses had been committed in his youth, while he had drug problems, and that the record showed that Mitchell had paid his time in jail, and thereafter made efforts to turn his life around, maintaining a job, getting married, and providing for his wife and children. Mitchell too spoke at his sentencing hearing, stressing that he had strived to turn his life around, and that he had served

his time to pay for the state offenses for which he was convicted. At the sentencing hearing, on the record, the Court, however, giving consideration to 3553 factors, and having heard counsel's and Mitchell's aruguments, stated that it did not believe a downward departure was appropriate in Mitchell's case. The Court noted that after his release from confinement for the offenses for which he was sentenced in 1998, Mitchell had in fact returned to criminal activity, as demonstrated by his subsequent history of convictions. In addition, the Court noted that there was the need to avoid sentencing disparity, where co-defendants had received sentences of 151 months. (See Sentencing Transcript, and SOR).

For these reasons, Mitchell's Ground IV is not entitled to relief on his claims in Ground IV.

### Ground V of the Motion/Memorandum (Cv:DE5)

In Mitchell's last claim, he argues that he is entitled to be resentenced based on the passage of the Fair Sentencing Act.

The Fair Sentencing Act of 2010 ("FSA"), signed into law on August 3, 2010, by President Obama, is the result of a lengthy effort to change the sentencing disparity between crack and powder cocaine.[7] See United States v. Lewis, 625 F.3d 1224, 1227–28 (10 Cir.2010)(explaining U.S. Sentencing Commission's repeated attempts to achieve reduction in crack/powder ratio after determining that disparity was unwarranted and Congress's repeated rejection of proposed sentencing guideline amendments); see also United States v. Douglas, 746 F.Supp.2d 220, 222–23, No. 09-202-P-H, 2010 WL 4260221, *2 (D.Me., Oct. 27, 2010) ("[T]he factual premises for the severe differential came into question, and increasing attention was directed to significant racial disparities that it produced in

---

[7] As noted by the Supreme Court in Kimbrough v. United States, 552 U.S. 85, 95 (2007), an effect of the disparity was that a "major supplier of powder cocaine may receive a shorter sentence than a low-level dealer who buys powder from the supplier but then converts it to crack."

federal drug sentencing."). In response to the criticism of the sentencing disparity, Congress took action by enacting the FSA, which is described in the Preamble as "restor[ing] fairness to Federal cocaine sentencing." FSA of 2010, pmbl., Pub.L. No. 111-220, 124 Stat. 2372, 2372 (codified as amended at 21 U.S.C. § 841(b)(1)(B)(iii) (2010)).

In line with the goal of fairness, the FSA amended the penalty provisions of 21 U.S.C. §841 by increasing the total amount of crack cocaine necessary to trigger mandatory five-year sentences from five to twenty-eight grams or more, and ten-year sentences from fifty to two-hundred-eighty grams or more. The history leading up to enactment of the FSA was discussed by the Supreme Court in <u>Dorsey v. United States</u>, __U.S.__, 132 S.Ct.2321, 2323 (2012). Therein the Court stated, as follows:

> Under the Anti-Drug Abuse Act (1986 Drug Act), the 5- and 10-year mandatory minimum prison terms for federal drug crimes reflected a 100-to-1 disparity between the amounts of crack cocaine and powder cocaine needed to trigger the minimums. Thus, the 5-year minimum was triggered by a conviction for possessing with intent to distribute 5 grams of crack cocaine but 500 grams of powder, and the 10-year minimum was triggered by a conviction for possessing with intent to distribute 50 grams of crack but 5,000 grams of powder. The United States Sentencing Commission—which is charged under the Sentencing Reform Act of 1984 with writing the Federal Sentencing Guidelines—incorporated the 1986 Drug Act's 100-to-1 disparity into the Guidelines because it believed that doing so was the best way to keep similar drug-trafficking sentences proportional, thereby satisfying the Sentencing Reform Act's basic proportionality objective. The Fair Sentencing Act, which took effect on August 3, 2010, reduced the disparity to 18-to-1, lowering the mandatory minimums applicable to many crack offenders, by increasing the amount of crack needed to trigger the 5-year minimum from 5 to 28 grams and the amount for the 10-year minimum from 50 to 280 grams, while leaving the powder cocaine amounts intact. It also directed the Sentencing Commission to make conforming amendments to the Guidelines "as soon as practicable" (but no later

than 90 days after the Fair Sentencing Act's effective date). The new amendments became effective on November 1, 2010.

Dorsey, supra, 132 S.Ct. at 2323.

Mitchell's claim that he is entitled to relief under the Fair Sentencing Act is without merit.

First, Mitchell is ineligible for any sentence reduction under the FSA because he was sentenced as a career offender. See United States v. Lawson, 686 F.3d 1317, 1321 (11 Cir.), cert. denied, U.S.__, 133 S.Ct. 568 (2012); United States v. Johnson, No. 12-10743, 2012 WL 6621402, at *1 (11 Cir., Dec. 18, 2012).

Second, the FSA would not apply retroactively to Movant Mitchell in this case because of the dates on which his criminal conduct in Case 08-60252-Cr-Cohn occurred, and on which he was sentenced. The Supreme Court on June 21, 2012, held that more lenient mandatory-minimums in the Fair Sentencing Act apply to defendants sentenced after August 3, 2010 [the effective date of the FSA], where their conduct occurred before that date. See Dorsey v. United States, ___U.S.___, 132 S.Ct.2321, 2335 (2012)("we conclude that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders"). On November 14, 2012, however, the Eleventh Circuit held that the FSA applies retroactively only to those defendants sentenced after August 3, 2010, the date on which the FSA took effect. United States v. Berry, 701 F.3d 374, 377-78 (11 Cir.2012) (noting that Dorsey did not suggest that the FSA's new mandatory minimums should apply to defendants like Berry, who were sentenced long before the FSA's effective date."). Relief on Mitchell's Ground V should therefore be denied.

## IV   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceeding for the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. §2255 Rule 11(b).

Here, it is apparent that Movant cannot make a substantial showing of the denial of a constitutional right. §2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The Movant shall therefore make any argument as to whether a Certificate should issue by objections to this Report and Recommendation.

### V    CONCLUSION

It is therefore recommended that: 1) as to all claims, relief on the Motion to Vacate pursuant to 28 U.S.C. §2255 (Cv:DE1, DE5), be DENIED; 2) this case be CLOSED; and 3) the Court deny a certificate of appealability upon entry of its final order.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: April 24th, 2013.

_____

UNITED STATES MAGISTRATE JUDGE

```
cc:  Leonard Mitchell, Pro Se
     Reg. No. 91268-004
     FCC - Coleman (Medium)
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 1032
     Coleman, FL 33521


     Corey Steinberg, AUSA
     United States Attorney's Office
     500 E. Broward Blvd., 7th Floor
     Fort Lauderdale, FL 33394


     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132
```